IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANITA A. WILLIAMS,                        )
                                          )
                    Plaintiff,            )
                                          )   CIVIL ACTION
v.                                        )
                                          )   No. 07-4077-JAR-JTR
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )
_____)


REPORT AND RECOMMENDATION


        Plaintiff seeks review of a decision of the Commissioner of

Social Security (hereinafter Commissioner) denying disability

insurance benefits under sections 216(i) and 223 of the Social

Security Act.  42 U.S.C. §§ 416(i) and 423(hereinafter the Act).

Plaintiff's brief alleges that this is also an action seeking

supplemental security income (SSI) payments pursuant to Title XVI

of the Act (Pl. Br., 1), but the record contains no application

for SSI or evidence regarding such an application.  In her

statement of the "Procedural History" of this case, plaintiff

points to no application for SSI payments (Pl. Br., 2)[1], and the

Complaint asserts only that plaintiff sought and was denied

_____

        [1]Plaintiff did not number the pages of her briefs, and thus
the court may err herein in making pinpoint citations to pages in
those briefs.

disability insurance benefits pursuant to Title II of the Act. (Doc. 1, 1).  Therefore, the court finds that this action seeks judicial review only of the Commissioner's decision dated Oct. 27, 2006 denying plaintiff's Mar. 5, 2004 application for disability insurance benefits.  (R. 15-34).

The case was referred to this court for a Report and Recommendation (Doc. 5) and is now ripe for decision.  The court recommends the Commissioner's decision be AFFIRMED.

## I.   Background

Plaintiff applied for disability insurance benefits alleging disability beginning Nov. 3, 2000.  (R. 15, 77-79).  Her application was denied initially and upon reconsideration, and plaintiff made an untimely request for a hearing before an Administrative Law Judge (ALJ).  (R. 15, 36, 49).  The ALJ found good cause for the late filing, and a hearing was ultimately held Sept. 12, 2006.  (R. 15, 375-404).  At the hearing plaintiff was represented by an attorney, and testimony was taken from plaintiff and a vocational expert.  (R. 375-76).

The ALJ filed a decision on Oct. 27, 2006 in which he found that plaintiff has a severe combination of impairments which prevents the performance of her past relevant work, but that she retains the residual functional capacity (RFC) to perform other jobs that exist in significant numbers in the economy.  (R. 15-34).  Plaintiff disagreed with the decision and sought, but was

denied, Appeals Council review of the decision.  (R. 7-11).
Therefore, the ALJ's decision is the final decision of the
Commissioner.  (R. 7); Blea v. Barnhart, 466 F.3d 903, 908 (10th
Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.
§ 405(g).  Section 405(g) provides, "The findings of the
Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court must determine whether
the factual findings are supported by substantial evidence in the
record and whether the ALJ applied the correct legal standard.
Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.
Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial
evidence is more than a scintilla, but less than a preponderance,
it is such evidence as a reasonable mind might accept to support
a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th
Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
The court may "neither reweigh the evidence nor substitute [it's]
judgment for that of the agency."  White, 287 F.3d at 905
(quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799,
800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172
(10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not
simply a quantitative exercise, for evidence is not substantial

-3-

if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20

-4-

C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ:  erred in considering and weighing the medical opinions of plaintiff's treating physician, Dr. Meek, and the agency consulting physician, Dr. Kim; erred in according excessive weight to the functional capacity evaluation performed by a physical therapist, Mr. Bullock; failed to include limitations as opined by Dr. Meek in the RFC assessment; and incorrectly assessed the credibility of plaintiff's allegations of symptoms.  The Commissioner argues that the ALJ properly weighed the medical opinions and the functional capacity

evaluation, properly evaluated the credibility of plaintiff's
allegations of symptoms, and properly assessed plaintiff's RFC,
and that all of the ALJ's findings are supported by substantial
evidence in the record.   The court notes that evaluation of the
medical opinions, medical evidence, plaintiff's testimony, and
the credibility of plaintiff's allegations is all part of a
proper assessment of plaintiff's RFC which occurs after step
three and before step four of the sequential evaluation process.
Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv.,
Rulings 149-50 (Supp. 2007).   Therefore, the court will first
address the allegations relating to evaluation of medical
opinions and medical evidence and then address the allegations
regarding the credibility determination, all before addressing
plaintiff's other allegations of error.

**III. Evaluation of Medical Opinions and Opinions of "Other
     Medical Sources"**

**A.   Dr. Meek's Aug. 2006 Medical Opinion**

Plaintiff argues both that the ALJ should have given
controlling weight to the Aug. 2006 opinion of plaintiff's
treating physician, Dr. Meek, and that the opinion should have
been given deference and accorded substantial weight.   The
Commissioner argues that the ALJ properly evaluated Dr. Meek's
opinion and his determination is supported by substantial
evidence.   With regard to controlling weight, plaintiff argues
that "Dr. Meek's opinion is supported by medically acceptable

-6-

diagnostic techniques," that "Dr. Meek's opinion is supported by other substantial evidence," and that "Dr. Meek's opinion is not inconsistent with the evidence as a whole." (Pl. Br. 10, 11). Plaintiff's argument misunderstands the standard for determining whether a treating source opinion is worthy of controlling weight.

"The regulations and agency rulings give guidance on the framework an ALJ should follow when dealing with treating source medical opinions." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003)(citing 20 C.F.R. § 404.1527(d)(2) and SSR (Social Security Ruling) 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u>(quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether "the opinion is consistent with other substantial evidence in the record." <u>Id.</u> (citing SSR 96-2p).[2] "[I]f the opinion is deficient in <u>either</u> of these respects, then it is not entitled to controlling weight." <u>Id.</u>(emphasis added).

The Commissioner has defined "controlling weight" as the weight given "to a medical opinion from a treating source that

_____

[2]Both SSR 96-2p and 20 C.F.R. § 404.1527(d)(2) phrase the second step of the inquiry in the negative:  an opinion may be given controlling weight only if it is "not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2); <u>and</u> SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2007).

must be adopted." <u>Soc. Sec. Ruling</u> (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2007).  Four criteria must be fulfilled before an opinion may be given "controlling weight:" (1) the opinion must come from a "treating source," (2) it must be a "medical opinion," (3) it must be "well supported" by "medically acceptable" clinical and laboratory diagnostic techniques, and (4) it must be "not inconsistent" with the other "substantial evidence" in the record.   <u>Id.</u>

The first two criteria are clearly met here.  Dr. Meek is a treating source who provided a total of five medical opinions which were evaluated by the ALJ.  (R. 25)(discussing May 7, 2004 "to whom it may concern letter" found at R. 191); (R. 26)(May 12, 2004 letter at R. 226); (R. 27)(Apr. 12, 2005 letter at R. 235); (R. 29)(June, 2005 medical questionnaire at R. 236-42); (R. 30)(Aug. 2006 medical questionnaire at R. 366-74).  Although the ALJ noted that Dr. Meek had not treated plaintiff nearly as frequently or as consistently as testified by plaintiff, he acknowledged that Dr. Meek had treated plaintiff "at up to 6-month intervals."  (R. 30); <u>see also</u> (R. 366 "Frequency of Treatment.  every one to six months.").  Moreover, in relation to Dr. Meek's opinions the ALJ specifically stated the standard for evaluating a treating source opinion (R. 25), and made specific findings that Dr. Meek's opinions would not be given controlling weight but that lesser weight would be given portions of Dr.

-8-

Meek's opinions, letters, and treatment notes.  (R. 25, 26, 27-
28, 29, 30-31).  Therefore, the decision reveals the ALJ accepted
Dr. Meek as a treating source and the Aug. 2006 opinion as a
"medical opinion."

    Although the ALJ found that certain of Dr. Meek's opinions
are not derived from "medically acceptable diagnostic techniques"
(R. 26)(May 12, 2004 letter), (R. 30)(Aug. 2006 medical
questionnaire), he did not state that the opinions are not
supported by medically acceptable <u>clinical and laboratory</u>
diagnostic techniques, and he did not explain specifically what
was lacking with regard to the diagnostic techniques reflected in
Dr. Meek's notes.  Therefore, the court cannot tell whether the
ALJ properly determined that the opinion is not well-supported by
medically acceptable clinical and laboratory diagnostic
techniques.  However, because an opinion cannot be accorded
"controlling weight" if either the third or the fourth criterion
is not met, the ALJ's decision not to accord "controlling weight"
to the opinion must be affirmed if the ALJ properly found the
fourth criterion is not met.  <u>Watkins</u>, 350 F.3d at 1300(if the
treating source opinion is deficient in either respect, it is not
worthy of "controlling weight").

    The ALJ found the fourth criterion is not met--that Dr.
Meek's Aug. 2006 opinion is inconsistent with the other
substantial evidence in the record.  (R. 30).  SSR 96-2p, cited

-9-

by the court in <u>Watkins</u>, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Supreme Court in <u>Richardson v. Perales</u>, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2007).  As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." <u>Id.</u>

Here, the ALJ explained in great detail the record evidence which is inconsistent with Dr. Meek's opinion. (R. 30-31).  His explanation included that Dr. Meek's and Dr. Peloquin's treatment notes and examinations revealed normal findings with only mild range of motion deficits; that Mr. Bullock, the physical therapist who administered the functional capacity evaluation, noted no apparent pain or distress with prolonged sitting, standing, or walking; that Dr. Meek's treatment notes do not reflect constant depression or concentration deficits; that the mental health care treatment notes reflect intact attention, concentration, and memory functioning, and no psychiatric or psychological abnormality; that plaintiff recently passed a driver's test; and that plaintiff failed to attend her scheduled

-10-

physical therapy sessions.  (R. 30-31).  As the ALJ noted, the
evidence cited is inconsistent with Dr. Meek's Aug 2006 opinions
that plaintiff (1) can stand only five minutes at a time, (2) can
lift no more than five to ten pounds occasionally, (3) has
moderate to marked limitations in gross or fine motor movements
or manipulative activities, (4) has depression and constant
concentration deficits, and (5) had undergone physical therapy.
(R. 30-31).

     The threshold for denying controlling weight is low.  The
ALJ need only find evidence which is "such relevant evidence as a
reasonable mind would accept as adequate to support a conclusion
that is contrary to the conclusion expressed in the [treating
source's] medical opinion."  SSR 96-2, West's Soc. Sec. Reporting
Serv., Rulings 113 (Supp. 2007).  Here, as the ALJ discussed, the
evidence cited is inconsistent with Dr. Meek's opinion.  In
conjunction with other evidence noted by the ALJ (multiple
admissions of chronic cocaine and alcohol abuse during the
relevant period; plaintiff's allegations of limitations are not
credible; Dr. Meek's treatment notes reveal good bilateral grip
strength, good range of motion, intact neurological functioning,
no spinal cord abnormality or impingement on the neural foramina,
normal ambulation and negative straight leg raising tests; Dr.
Meek's responses on the June 2005 medical questionnaire that
plaintiff's symptoms and functional limitations are not

reasonably consistent with her impairments and that her symptoms exceed physical findings; plaintiff's cancellation or "no show" for numerous medical appointments; plaintiff's performance of substantial gainful activity during the period she alleges disability; Dr. Peloquin's treatment notes; and Mr. Bullock's functional capacity evaluation), the evidence which is inconsistent with Dr. Meek's opinion is such evidence as a reasonable mind might accept as adequate to support a conclusion that is contrary to Dr. Meek's medical opinion.  At this stage of the analysis, the question is not whether Dr. Meek's opinion should be rejected completely, but whether it is "not inconsistent" with the other "substantial evidence" in the case record.  Because the record supports the ALJ's finding that Dr. Meek's opinion is inconsistent with the other substantial evidence in the record, the ALJ was correct in finding that Dr. Meek's opinion cannot be given "controlling weight."

Plaintiff also claims that the ALJ erred in failing to accord substantial weight to Dr. Meek's opinion.  (Pl. Br. 12-13).  Plaintiff cites to the six regulatory and case-law factors relevant to weighing medical opinions.  (Pl. Br. 12)(citing Watkins, 350 F.3d at 1300-01), see also, 20 C.F.R. § 404.1529(d). He then notes that the opinion of a treating physician is worthy of deference and argues that "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to

examine the other physicians' reports 'to see if [they] 'outweigh' the treating physician's report, not the other way around.'" (Pl. Br. 12-13)(quoting Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 289-90 (10th Cir. 1995)(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988))). Plaintiff then makes her argument consisting of but a single sentence, "The ALJ provides no indication that he adequately evaluated Dr. Meek's opinion based on these [six regulatory] factors." (Pl. Br. 13). The court does not agree.

As plaintiff's brief implies, the ALJ did not perform a factor-by-factor evaluation of the regulatory factors, and did not "check off the factors" in his discussion of Dr. Meek's opinion. However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)(quoting Watkins, 350 F.3d at 1300). Here, the ALJ made clear his analysis, expressing the weight given Dr. Meeks Aug. 2006 opinion and the reasons for that weight. Moreover, the ALJ discussed and evaluated four other opinions from Dr. Meek, explained the weight given those opinions, and the reasons for that weight. (R. 25-29). More is not required.

**B.   Dr. Kim's RFC Assessment**

Plaintiff claims that the ALJ failed to discuss the medical opinion of a state agency consultant, Dr. Y. Kim, contained in a RFC assessment in the record.  She argues that the ALJ neglected to indicate the weight accorded to Dr. Kim's opinion in violation of SSR. 96-6p.  The Commissioner argues that the ALJ properly considered and rejected Dr. Kim's opinion, and that this determination is supported by substantial evidence in the record. The court agrees with the Commissioner.

The ALJ discussed Dr. Kim's opinion in the last paragraph of his more-than-eleven-pages of RFC assessment (R. 20-32):

> In reaching the above-cited residual functional capacity assessment, the Administrative Law Judge has considered the assessments and medical opinion provided by Dr. Kim, the State agency medical consultant.  He opined the claimant retains the capacity to perform a significant range of sedentary exertional work activity, including no significant manipulative limitation.  The undersigned has additional records to consider that were not available to Dr. Kim.  The undersigned finds the claimant is capable of light exertional activity as reflected in the June 2004 functional capacities evaluation [of Mr. Bullock], the claimant's admissions of ability to perform a wide range of activities of daily living, and the evidence of record as a whole.

(R. 32).

Although the ALJ did not specifically state that he rejected the bulk of Dr. Kim's opinion, in context it is clear that he did.  The ALJ indicated he rejected Dr. Kim's opinion because it is inconsistent with additional evidence received after Dr. Kim formed his opinion, including Mr. Bullock's functional capacity

-14-

evaluation, plaintiff's admissions regarding her daily
activities, and the record as a whole.  Before making the
analysis above, the ALJ had just completed his discussion of the
evidence relating to plaintiff's RFC assessment, and the court
finds it is not necessary for the ALJ to repeat the discussion or
state again the specific evidence contrary to Dr. Kim's opinion.

The cases to which plaintiff cites in support of her
argument do not require a different result.  As plaintiff notes,
a decision may be remanded when the ALJ fails to discuss a
medical consultant's opinion which is (at least in part) contrary
to the ALJ's decision.  (Pl. Br. 13)(citing <u>Tiger v. Apfel</u>, No.
97-5134,  1998 WL 166246, *1-2 (10th Cir. Apr. 7, 1998);[3] and
<u>Ridge v. Apfel</u>, 15 F. Supp. 2d 1086, 1088-89 (D. Kan. 1998)).  In
<u>Tiger</u>, however, the court made clear that the ALJ in that case
<u>failed to discuss or mention</u> the opinion at issue.  <u>Tiger</u>, 1998
WL 166246 at *1.  In like manner, the court in <u>Ridge</u> noted that
the ALJ made <u>no mention</u> of the opinion at issue there.  <u>Ridge</u>, 15
F. Supp. 2d at 1088-89.  This case is quite different from those
cited.  The ALJ here not only mentioned Dr. Kim's opinion, he
discussed it, and explained why he had rejected it.  The court
finds no error in the evaluation of Dr. Kim's opinion.

───────────────

[3]The court notes that plaintiff did not provide a citation
to <u>Tiger</u> as required by local rule, but merely cited to the table
in the Federal Reports (141 F.3d 1186) where <u>Tiger</u> is listed as
an unpublished opinion.  D. Kan. Rule 7.6(b).

C.    Mr. Bullock's "Other Medical Source" Functional
      Capacity Evaluation

Plaintiff claims in her briefs that the only evidence
contrary to Dr. Meek's opinion is the functional capacity
evaluation performed by Mr. Bullock; that Mr. Bullock is a
physical therapist, not a medical doctor, and hence not an
"acceptable medical source" as defined in the regulations; and
that Mr. Bullock's opinion is not a "medical opinion" and must be
accorded less weight than the opinion of Dr. Meek.   (Pl. Br.,
11); (Reply, 2).   As discussed above, the ALJ discussed and
explained the record evidence which he found contrary to Dr.
Meek's opinion, and that finding is supported by substantial
evidence in the record.   Although that evidence included Mr.
Bullock's functional capacity evaluation, and although the ALJ
relied upon Mr. Bullock's evaluation in making the specific RFC
findings assessed in the decision, the evidence upon which the
ALJ relied to discount Dr. Meek's opinion included much more than
just Mr. Bullock's evaluation.

Further, in these circumstances the court finds it is not
necessary that Dr. Meek's opinion be accorded greater weight than
that of Mr. Bullock.   "Medical opinions" are defined as
"statements from physicians and psychologists or other acceptable
medical sources that reflect judgments about the nature and
severity of [claimant's] impairment(s), including [claimant's]
symptoms, diagnosis and prognosis, what [claimant] can still do

-16-

despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The regulations include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists within the meaning of "acceptable medical sources." Id., § 404.1513(a)(2). The regulations provide that the Commissioner may use evidence from "other medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, not on the list of "acceptable medical sources" to show the severity of plaintiff's impairments and how they affect her ability to work. 20 C.F.R. § 404.1513(d).

As plaintiff argues, Dr. Meek is an "acceptable medical source," and Mr. Bullock is not. Therefore, Dr. Meek's opinion on the nature and severity of plaintiff's impairments and plaintiff's capabilities is a "medical opinion," and Mr. Bullock's opinion is not a "medical opinion" as defined in the regulations. However, Mr. Bullock's opinion is evidence from an "other medical source" as defined in the regulations and may properly be used by an ALJ to show the severity of plaintiff's impairments and how they affect her ability to work. Shortly before the ALJ's decision at issue here, the Commissioner promulgated a Social Security Ruling (SSR) clarifying and explaining how the agency will consider opinions and other

evidence from persons who are not "acceptable medical sources."
SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 327-34
(Supp. 2007).  The Ruling provides that such opinions will be
evaluated using the six regulatory factors for evaluating medical
opinions; id. at 331-32(citing 20 C.F.R. § 404.1527); and
explains that the ALJ "generally should explain the weight given
to opinions from these 'other sources,' or otherwise ensure that
the discussion of the evidence in the determination or decision
allows a claimant or subsequent reviewer to follow the
adjudicator's reasoning, when such opinions may have an effect on
the outcome of the case."  Id. at 333.  In the Ruling, the
Commissioner recognizes that "depending on the particular facts
in a case, and after applying the factors for weighing opinion
evidence, an opinion from a medical source who is not an
'acceptable medical source' may outweigh the opinion of an
'acceptable medical source,' including the medical opinion of a
treating source."  Id. at 332.  The Tenth Circuit recently
recognized and considered the procedures that SSR 06-03p requires
to be applied in evaluating the opinions of such "other medical
sources."  Frantz v. Astrue, 509 F.3d 1299, 1301-02 (10th Cir.
2007).  That court remanded for consideration of that case in
light of the specific requirements of the SSR.  Id. 509 F.3d at
1302.

Here, the ALJ acknowledged that Mr. Bullock is not an "acceptable medical source," and consequently refused to accord "controlling weight" to Mr. Bullock's opinion, but explained the weight he gave to Mr. Bullock's opinion. (R. 31-32). The ALJ provided an unusually thorough RFC assessment (R. 20-32), and, as explained above, that assessment is supported by substantial evidence in the record as a whole. The ALJ explained his consideration and weighing of the "medical opinions" and of Mr. Bullock's "other medical source" opinion, and the court finds no error in the evaluation.

## IV. Credibility Determination

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact." Diaz v. Sec'y of Health & Human Serv., 898 F.2d 774, 777 (10th Cir. 1990). Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 801 (10th Cir. 1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

-19-

Plaintiff claims the ALJ erred in his evaluation of the credibility of plaintiff's allegations of symptoms producing disabling limitations. (Pl. Br., 16-19). Specifically, plaintiff argues that the ALJ "used even minor inconsistencies" (Pl. Br., 16) and plaintiff's "sporadic performance of household tasks or work" (Pl. Br. 18) to establish that plaintiff can engage in substantial activity, and improperly considered plaintiff's failure to pursue epidural steroid injections in support of his incredibility finding. Plaintiff's argument focuses on portions of the decision taken out of context and ignores the complete decision and the evidence on the record as a whole in claiming error in the credibility determination.

The court will first address plaintiff's argument regarding failure to pursue treatment. As plaintiff argues, it is error for an ALJ, in making a credibility determination, to rely on a failure to pursue treatment without first considering "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)(quoting Frey v. Bowen, 816 F.2d 508, 517). However, contrary to plaintiff's allegations, the ALJ here did not rely on an alleged failure to pursue treatment in finding plaintiff's allegations incredible.

In accordance with the regulations and case law; <u>e.g.</u>, <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987); <u>and</u> 20 C.F.R. § 404.1529; the ALJ found that plaintiff has a pain-producing impairment, and that there is a "loose nexus" between the impairment and plaintiff's allegations of pain, but that, considering all of the record evidence, both objective and subjective, plaintiff's allegations are not credible and her pain is not in fact disabling.  (R. 22).  Specifically, the ALJ stated four reasons that require a finding that plaintiff's allegations are not credible:

> [(1)] the objective and clinical findings, [(2)] the claimant's demonstrated capacity to engage in substantial gainful activity during the relevant period at issue despite her combined impairments including some continued substance abuse, and [(3)] the evidence of record as a whole do not support the extreme degrees of pain, other symptoms, and limitations alleged. Further, [(4)] the record contains multiple inconsistencies and factors that significantly detract from her general credibility regarding the degrees of her alleged symptoms and limitations.

(R. 22).  The ALJ concluded that plaintiff does experience some pain and limitations resulting from her symptoms, but not to the disabling degree alleged.  <u>Id.</u>

Thereafter, the ALJ discussed the record evidence and the medical opinions relevant to his RFC assessment.  (R. 22-32).  Numerous times in this discussion, the ALJ noted that the evidence was inconsistent with plaintiff's allegations that she had visits with Dr. Meek monthly or more frequently beginning in

the 1990s.  (R. 23, 24, 25, 27, 29, 31).  The ALJ also noted numerous instances where plaintiff had cancelled or was a "no show" for scheduled appointments.  (R. 24, 27, 29, 31).  The portion of the decision to which plaintiff cites to show error in evaluating a failure to pursue treatment, is to a similar effect as the rest of the discussion.  (R. 24-25).  The paragraph at issue begins,

> The medical evidence hereafter again does not support
> the claimant's allegations of ongoing follow-up visits
> with Dr. Meeks at weekly or monthly intervals, but
> rather the next encounter with a physician occurred
> more than 3 months later in late October 2003, wherein
> she presented to Dr. Peloquin.

(R. 24-25).  The ALJ summarized the course of treatment with Dr. Peloquin beginning in Oct. 2003.  (R. 24-25).  He discussed plaintiff's reports to Dr. Peloquin, Dr. Peloquin's notation that he had not seen plaintiff at all during the previous eleven months, Dr. Peloquin's physical examination of plaintiff, and Dr. Peloquin's offer of epidural injections.  (R. 25).  The ALJ noted that plaintiff declined the injection, but returned about six weeks later in December, 2003 and received an injection.  Id.  He concluded his discussion, "there is no evidence that [plaintiff] presented back to [Dr. Peloquin] proximally thereafter to undergo additional injections in the recommended series."  Id.

Although not cited in plaintiff's briefs, the ALJ also summarized prior treatment by Dr. Peloquin in December, 2002 which also included an epidural steroid injection (R. 24), and

-22-

noted plaintiff's testimony that "she underwent a total of about 9 epidural injections." (R. 21). What plaintiff's argument misses is that nowhere does the decision indicate a conclusion by the ALJ that plaintiff is not credible because she failed to pursue treatment that was recommended. Rather, the ALJ focused on the fact that the evidence regarding plaintiff's treatment was directly contradictory to plaintiff's testimony that she had a series of about nine steroid injections, or that she had been treated by Dr. Meeks monthly or more frequently. This understanding of the ALJ's focus is confirmed by his later explanation regarding the course of treatment:

> The claimant alleged she had undergone a total of about 9 epidural steroid injections; however, Dr. Peloquin's records reflect only 2 such injections that were performed about 11 months apart and that she did not undergo the subsequent recommended injections in the prescribed series. She alleged she had undergone weekly to monthly visits with Dr. Meeks; however, there is no evidence of any medical treatment whatsoever proximal to the alleged onset date of disability and more than a year thereafter until February 2002, and the treatment notes of record reveal multiple occasions spanning several months duration between office visits.

(R. 31). In accordance with the ALJ's stated reasons for finding plaintiff's testimony incredible, these facts are "inconsistencies and factors that significantly detract from her general credibility." (R. 22). The court finds no error in the ALJ's consideration, summarization, or discussion of the course of plaintiff's medical treatment.

Finally, the court addresses plaintiff's allegation that the ALJ erred in using even minor inconsistencies and sporadic performance of household tasks to establish that plaintiff is capable of engaging in substantial activity.  Plaintiff cites no authority for the proposition that minor inconsistencies may not be used in evaluating the credibility of plaintiff's allegations. Even minor inconsistencies between plaintiff's allegations and other portions of the record are relevant to consideration of the credibility of plaintiff's allegations, and when considered as a whole may well be indicative of a lack of credibility.

Plaintiff quotes SSR 96-7p, "Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time," and states that "This may explain why Mrs. Williams does not always allege the same intensity, persistence, or functional effects of her symptoms."  (Pl. Br. 16)(quoting SSR 96-7p, West's Soc. Sec. Reporting Serv., Rulings 138 (Supp. 2007)).  As plaintiff argues, symptoms may vary over time, and an adjudicator must be careful to consider this fact in making his decision.  SSR 96-7p cautions that:

> the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible.  Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms.  Therefore, the adjudicator will need to <u>review the case record to determine</u>

-24-

whether there are any explanations for any variations
in the individual's statements about symptoms and their
effects.

96-7p, West's Soc. Sec. Reporting Serv., Rulings 138 (Supp.

2007)(emphasis added).

Plaintiff appeals to this cautionary section of the SSR and

asserts that the ALJ "regularly used even minor inconsistencies,"

but points to no record evidence which might indicate the ALJ

failed to consider the possibility of variations in plaintiff's

symptoms over time.  The court has found no indication of such an

error, and will not presume error without tangible evidence.  The

ALJ stated he had "carefully considered the evidence and

testimony of record with due regard for the contentions advanced

and the applicable law and regulations." (R. 15).  The ALJ

stated the law applicable to an assessment of plaintiff's

allegations (R. 21-22) and included a citation to SSR 96-7p.  (R.

22).  As the Tenth Circuit has stated, "our general practice,

which we see no reason to depart from here, is to take a lower

tribunal at its word when it declares that it has considered a

matter." Hackett, 395 F.3d at 1173.  The court finds no error in

the ALJ's reliance on inconsistencies when evaluating plaintiff's

credibility.

Plaintiff's argument, that using minor inconsistencies

constitutes using "sporadic performance of household tasks or

work" to establish that plaintiff is capable of substantial

activity, is equally unavailing.  The portion of the decision
quoted by plaintiff reveals the error in her argument, for the
ALJ was not suggesting that plaintiff's activities as cited in
that one sentence demonstrate the ability for substantial
activity, rather, he was pointing out another inconsistency
between plaintiff's activities and plaintiff's allegations.

> She alleged she lies down throughout most of each day
> due to pain; however, that allegation is widely
> inconsistent with her prior admissions reflected in a
> disability questionnaire that she provides for her own
> personal care and hygiene, helps care for her
> grandchildren, sometimes picks up a grandchild at
> school, reads, watches television, visits family and
> friends, leaves home without assistance, and sometimes
> performs household chores such as cooking, mopping,
> dusting, washing dishes, doing laundry, and cleaning
> bathrooms.

(R. 31)(quoted at (Pl. Br. 16)(emphasis added by court).
Further, the sentence quoted by plaintiff is merely one sentence
of a nine-sentence paragraph (including the two sentences quoted
by the court on page 23 above) in which the ALJ summarized much
of the evidence upon which he based his finding of incredibility.
The ALJ affirmatively linked his credibility determination to
substantial evidence in the record, and the court finds no error
in that determination.

## V.   Remaining Allegation of Error

Because the ALJ did not err in his evaluation of the medical
opinions, Mr. Bullock's functional capacity evaluation, or the
credibility of plaintiff's allegations, it was not error to fail

to include the limitations assessed by Dr. Meek in the ALJ's hypothetical questioning of the vocational expert.  The hypothetical presented to a vocational expert must include all limitations found by the ALJ, but need not include all limitations alleged by plaintiff.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000).  The ALJ need only include limitations which he finds supported by substantial evidence in the record. Davis v. Apfel, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999).  The court finds no error in the hypothetical questioning

**IT IS THEREFORE RECOMMENDED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 19th day of May 2008, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-27-